POSTAL TELEGRAPH-CABLE CO. v. MILLER, STATE TAX COLLECTOR.

(Division B. Nov. 11, 1929.)

[124 So. 434. No. 28106.]

Fitts & Fitts, of Birmingham, Ala., and Flowers, Brown & Hester, of Jackson, for appellant.

Franklin, Easterling & Rosenthal, of Jackson, and **P. C. Canizaro,** of Vicksburg, for appellee.

Argued orally by **Wm. C. Fitts** and **J. T. Brown**, for appellant, and by **Lamar F. Easterling** and **P. C. Canizaro**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee brought this action against appellant in the first judicial district of Hinds county to recover of appellant the privilege tax imposed by section 194, chapter 118, of the Laws of 1926 (Hemingway's Code of 1927, section 7762), of thirty-five cents per mile for each mile of pole line operated by appellant in this state, over which appellant carries on a long-distance telephone business. There was a judgment for appellee for the amount sued for, from which judgment appellant prosecutes this appeal.

The cause was tried on facts agreed to by the parties, embodied in writing, and made part of the record, which, leaving off the formal parts, follows:

"The Postal Telegraph-Cable Company is a corporation organized under the laws of the state of Delaware, and is engaged in the telegraph business in the state of Mississippi. It owns a telegraph pole line in the state of Mississippi over which it transmits messages by telegraph in the ordinary course of its business as such telegraph company, and on this pole line it paid to the state of Mississippi as and when due the privilege tax of thirty-five cents per mile imposed by section 193 of chapter 118 of the Laws of 1926.

"The Postal Telegraph-Cable Company does not own or maintain any telephone exchanges in the state of Mississippi, but in order to facilitate the business of certain of its patrons in the state of Mississippi who do a large

telegraph business, it has installed telephones in their places of business, and they are thus enabled to talk direct to persons in other towns, provided there is a telephone of the Postal Telegraph-Cable Company installed in the place of business of the person to whom it is desired to talk. No connection is or can be made under such arrangement to any other phone than a phone of the Postal Telegraph-Cable Company. Such telephones are not installed in residences, but only for the use and convenience of the larger business concerns in the state, who desire such service. The connection between these phones is made over and along the telegraph wires of the Postal Telegraph-Cable Company, and over and along the same pole line that is maintained for its telegraph business.

"No additional pole line is maintained for the telephone business. The same wires that are used in the company's telegraph business are also used for the telephone business. Messages by telephone and telegraph are transmitted over these wires at one and the same time, the same wire being used for both purposes at the same time. No rental or other charge is made by the company for the use of the telephone equipment furnished as aforesaid, but a charge is made for each conversation over the line, which charge is approximately twenty-five per cent less than a long-distance telephone call of equal length would be according to the rates in effect over the line of the Southern Bell Telephone Company, which is a telephone company engaged in the local and long-distance telephone business in Mississippi.

"The Postal Telegraph-Cable Company has not paid the additional privilege tax of thirty-five cents per mile on its pole line over which telephone messages are transmitted as aforesaid, which is sought to be imposed and collected under the provisions of section 194 of chapter 118 of the Laws of 1926.

"Any one desiring to talk to a person having one of the phones of the Postal Telegraph-Cable Company can do so by going to the office of the Postal Telegraph-Cable Company and calling such person. This statement, together with the interrogatories and answers thereto filed herein, shall constitute the agreed statement of facts on which this case may be tried."

The applicable provisions of the Privilege Tax Code are section 193 and the second paragraph of section 194, and sections 237 and 239 of chapter 118 of the Laws of 1926 (Hemingway's Code 1927, sections 7761, 7762, 7811, and 7813), which follow in the order stated.

"Each telegraph company shall pay thirty-five cents per mile for each mile of pole line which it operates in this state."

"Each telephone company doing a long-distance telephone business in this state shall pay thirty-five cents per mile for each mile of pole line which is operated in this state."

"All privilege taxes herein levied shall be paid in addition to any and all other taxes, and any person, firm or corporation pursuing more than one of the businesses herein taxed shall pay the privilege tax on each separate business so conducted or pursued, except as otherwise specifically provided by law."

"All privilege taxes herein levied shall be paid in addition to any and all other taxes, and any person, firm or corporation pursuing more than one of the businesses herein taxed shall pay the privilege tax on each separate business so conducted or pursued, except as specifically provided by law. It is the intention and purpose of this act to impose privilege taxes on every person, firm, and corporation engaged in the several businesses named herein in the amount and in the manner set out herein."

Appellant paid thirty-five cents per mile for each mile of pole line over which it carries on a *telegraph business* in this state, but refused to pay thirty-five cents per mile

for the privilege of doing a long-distance telephone business in this state over the same pole lines over which its telegraph business was carried on.

Appellant contends that it is operating in this state one business, not two; that the telegraph business and the telephone business constitute a single business; that each is only a phase of the same business; that they are so intimately connected that they cannot be separated, and therefore to tax each would be a double taxation.

Appellant cites authorities from other jurisdictions sustaining that position. Our court, however, has taken a contrary view. Railroad Co. v. Cumberland Tel. & Tel. Co., 88 Miss. 438, 41 So. 258. When that case arose, there was no statute in this state conferring the right of eminent domain on telephone companies. There was a statute, however (sections 854 to 858 and 4291 of the Code of 1892), conferring the right on telegraph companies. The telephone company claimed that that statute necessarily conferred the right on telephone companies; that the telephone business was but a phase of the telegraph business. The court held:

"Whatever may be the true rule of interpretation as to whether the phrase 'telegraph company' necessarily embraces 'telephone company,' as held in many authorities cited by the learned counsel for appellee, it is quite clear, in our state, that telegraph companies and telephone companies are treated, and have always been treated, as separate and distinct companies. Chapter 38, p. 93, of the Acts of 1886, was manifestly repealed by the provisions of Code 1892, sections 854-858, inclusive, and section 4291. There is nothing in the constitutional provisions referred to which conferred upon telephone companies any authority to exercise the right of eminent domain. It results from these views that the Cumberland Telephone & Telegraph Company was without any authority under our law to exercise the right of eminent domain in this case."

It appears, however, that most of the courts in this country have held to the contrary; but the position of our court is supported by Richmond v. So. Bell Tel. & Tel. Co., 174 U. S. 761, 19 S. Ct. 778, 43 L. Ed. 1162; and Telegraph Co. v. Mayor of Nashville, 118 Tenn. 1, 101 S. W. 770, 11 Ann. Cas. 824.

In the Richmond Case the supreme court of the United States had before it for construction the Post Roads Act of Congress (47 USCA, section 1 et seq.), conferring upon telegraph companies the right to construct their poles and wires along post roads. After the telephone was invented and came into use, the Southern Bell Telephone & Telegraph Company claimed the benefit of that act of Congress, on the ground that the telegraph business and the telephone business were but a single business, and therefore the act applied to both. The court held that the act had no application to telephone companies, whose business was that of electrically transmitting articulated speech between different points.

In the Tennessee case the court held that a statute of that state, authorizing telegraph companies to construct their poles and wires upon the public roads and streets, did not apply to telephone companies, because the business of the two are separate and distinct.

Appellant contends further that, applying the well-established principle to the statute involved, that a taxing statute is to be construed most strongly against the power to tax, there is no authority in the statute to require appellant to pay a privilege tax for its telegraph business, and also for its long-distance telephone business, carried on in this state. We think appellant's position is without merit. We have here appellant, engaged in two separate and distinct businesses, namely, the telegraph business and the long-distance telephone business, in this state. The statute, in plain language, taxes separately the privilege of carrying on each business. The first section of the Privilege Tax Code above copied

taxes the privilege of carrying on the telegraph business in this state; the tax being thirty-five cents per mile for each mile of pole lines operated in this state. The second paragraph of the following section set out above taxes telephone companies for the privilege of doing a long-distance telephone business in this state, and the tax is measured in the same manner as the tax on doing a telegraph business. Then the other two sections of the statute above copied provide, in substance, that any firm, person, or corporation pursuing *more than one of the businesses herein taxed shall pay the privilege tax on each separate business so conducted or pursued.*

As we view the statute, its language is not open for construction. It plainly provides that, where any person, firm, or corporation is doing more than one of the businesses taxed by the statute, it shall pay a separate privilege tax on each business so conducted, "except where otherwise specifically provided by law." There is no statute elsewhere otherwise specifically providing. Where several separate and distinct occupations or privileges are pursued by the same person, a separate privilege tax may be imposed on each occupation or privilege, notwithstanding they are all combined in one general business, and the appliances and instrumentalities used are in a large measure common to both. 37 C. J., 209, 210, and authorities in the notes. A license to pursue a given occupation or business must be strictly complied with. Such a license does not confer the right on the licensee to pursue another distinct and different business or occupation. 37 C. J., 244, par. 104.

Something is said in the brief with reference to the constitutionality of the statute involved—whether it violates the commerce clause of the Federal Constitution (article 1, section 8, clause 3). Construing the statute as we have, it places no burden on interstate commerce; it is purely a domestic regulation. It levies a tax on telephone and telegraph companies for the privilege of

doing a purely domestic business. In Pullman Palace Co. v. Adams, 78 Miss. 814, 30 So. 757, 84 Am. St. Rep. 647, the court had under consideration section 3387 of the Code of 1892, levying a privilege tax of one hundred dollars on each sleeping car company carrying passengers from one point to another in this state, and in addition thereto twenty-five cents a mile for each mile of railroad over which the company ran its cars. The statute was attacked on the ground that it violated the commerce clause of the Federal Constitution. The court held that it did not; that the statute related alone to domestic business; that the statute did not levy the tax on the interstate business of the palace car company.

Affirmed.